# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D16-3763

_____

TERRY G. TRUSSELL,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Dixie County.
James C. Hankinson, Judge.

August 24, 2018

PER CURIAM.

Terry Trussell raises nine issues on appeal of his convictions for falsely acting as a public officer in connection with a legal process. *See* § 843.0855, Fla. Stat. (2014). We affirm and, in particular, find no error with respect to how the State charged Mr. Trussell in the Information, or presented its closing argument to the jury.

I.

In 2014, Dixie County impaneled a grand jury and Mr. Trussell was selected to be its foreperson. During the grand jury proceedings, Mr. Trussell presented a theory of a large-scale criminal conspiracy involving various individuals and entities. The grand jury provided Mr. Trussell time to find evidence to support

his conspiracy theory, but ultimately declined to pursue the theory. Around this same time, the grand jury was scheduled to reconvene on the afternoon of August 14, 2014. But that morning, Mr. Trussell sought early entry to the courtroom from the Clerk of Court and received it. Upon gaining access to the courtroom, Mr. Trussell assembled with twenty-five other persons who declared themselves to be the "People's Grand Jury Under Common Law in Dixie County, Florida." Mr. Trussell assumed the role as this group's "Foreman," and presented his criminal conspiracy theory to them. The group proceeded to approve two "True Bills" calling for the arrest and prosecution of many public officials on multiple criminal charges. And then they adjourned.*

The next day, on August 15, 2014, Mr. Trussell returned to the court and presented the Clerk of Court with the two "True Bills" approved by the ad hoc "People's Grand Jury" the previous day, which called for the arrest of several public officials and others on numerous charges. The Clerk of Court received the documents, stamped them "Sworn To and Subscribed Before Me," and signed and dated them. The first line of the Bills stated:

> We the People's Grand Jury Under Common Law in Dixie County, Florida . . . met [on August 14, 2014, at 10:00 AM] at the Dixie County Court House for the purpose of considering charges against [various public officials].

From there, the Bills identified the many persons and entities who were recommended for arrest and prosecution and listed a smorgasbord of charges. Mr. Trussell signed the "True Bills" as "Foreman, People's Grand Jury Under Common Law In Dixie County, Florida."

Approximately one month later, the State charged Mr. Trussell by information with multiple counts of violating § 843.0855. Mr. Trussell ultimately received a jury trial and was convicted on five counts.

---

* Later that afternoon, the real grand jury for Dixie County, including Mr. Trussell as its foreperson, convened as previously scheduled. But they were promptly dismissed.

2

## II.

Mr. Trussell now raises nine arguments on appeal seeking to reverse his conviction. We disagree and affirm on all of them, but write specifically to address his arguments related to Counts I and II, that the State's closing argument improperly relied upon a theory of the crime not charged in the Information.

Counts I and II of the Information charged Mr. Trussell with unlawful impersonation-related crimes for filing two purported true bills as the foreman of Dixie County's "People's Grand Jury." The Information alleged:

> On or about August 15, 2014, [Mr. Trussell] did unlawfully and deliberately impersonate or falsely act as a foreperson of a grand jury, a public officer or employee, in connection with or relating to the filing of a True Bill . . . , a legal process affecting persons and property, or otherwise took any action under color of law against persons or property, contrary to section 843.0855(2), Florida Statutes.

Mr. Trussell argues that the State improperly argued to the jury and secured his conviction on the basis of his actions to gain courtroom access for the "People's Grand Jury" on August 14. He argues that this was fundamental error because the Information only charged him with impersonation or false acts in connection with filing the "True Bills" on August 15, not with improperly entering or using the courtroom. Specifically, the State asserted that Mr. Trussell's actions satisfied the first element of the crime on account of the evidence that he accessed the courtroom by using his position as foreman of the real grand jury in Dixie County: "One of the things that Terry Trussell did with . . . the clerk of court was he came in, she knew him to be the foreman of the grand jury, and told her he needed the courtroom to set up for the grand jury." The State rebuttal argument called Mr. Trussell's actions to obtain the courtroom a "[t]otal fraud." And it asked the jury to find the defendant guilty of Counts I and II in part because "he used a ruse to get the courtroom." The defense made a timely objection asserting that the State was introducing improper character

3

evidence in violation of § 90.404(b), but the trial court overruled the objection. In Mr. Trussell's responsive argument, his counsel countered that he wasn't charged with impersonation with respect to requesting or accessing the courtroom, but rather in connection with the filing of true bills with the clerk's office.

We have little difficulty concluding that Mr. Trussell was properly charged and convicted of the crimes stated in the Information related to filing bogus true bills. *See Price v. State*, 995 So. 2d 401, 404 (Fla. 2008) (describing charging requirements). The charges filed against Mr. Trussell were drafted in broader strokes than his argument suggests. Mr. Trussell was charged with impersonating or falsely acting as the foreperson of a grand jury "*in connection with or relating to* the filing of [True Bills]." (Emphasis added.) His convictions on these charges found support in the evidence that Mr. Trussell committed multiple discrete acts of "deliberately impersonat[ing] or falsely act[ing] as a foreperson of a grand jury . . . in connection with or related to the filing of True Bill[s]." The evidence of Mr. Trussell's culpable acts leading to the filing of the "True Bills" included: impersonating his own alter ego, the foreman of the real grand jury in Dixie County, to gain early access to the courthouse; assembling a sham grand jury in the Dixie County courthouse before the proper meeting of the real grand jury; assuming the role of foreman of the sham grand jury; presenting criminal conspiracy charges to the sham grand jury against a number of public officials and entities; gleaning unanimous votes recommending the arrest and prosecution of public officials and entities as foreman of the sham grand jury; and then signing and presenting the clerk of court with two "True Bills" as "Foreman" of the sham grand jury, which directed the Clerk of Court "to forward a copy of [the True Bills] to the Dixie County Sheriff for the[ir] arrest . . . and for the court clerk to send the Special Prosecutor." Mr. Trussell's act-by-act impersonation of a legitimate grand jury foreperson over the two-day period, culminated with his filing of the two sham "True Bills." But it all began with his acts to gain access to the courtroom for the multi-member "People's Grand Jury," which the State highlighted in its closing argument.

That the State's closing argument chose to focus on Mr. Trussell's early actions in this episode to make its impersonation-

4

related case is not problematic. Mr. Trussell's initial deception in gaining access to the courtroom for himself and the members of a sham grand jury inaugurated his entire charade. It led directly to Mr. Trussell's filing the two "True Bills" the next day. In fact, the "True Bills" themselves purported to establish their legitimacy and authority from the fact that they arose from a meeting the day before at the courthouse: "We the People's Grand Jury Under Common Law in Dixie County, Florida on August 14th, 2014, at 10:00 AM met at the Dixie County Court House for the purpose of considering charges against [certain public officials]." And so, Mr. Trussell's access and use of the courtroom fit squarely within the Information's charge of impersonating a foreperson of a grand jury "in connection with or relating to the filing of [the] True Bill[s]." Under these circumstances, we cannot agree with Mr. Trussell's argument that the Information was faulty, or that the State improperly argued an uncharged theory.

III.

For these reasons, Mr. Trussell's judgment and sentence is AFFIRMED.

OSTERHAUS and M.K. THOMAS, JJ., concur; JAY, J., concurs in part and dissents in part with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

JAY, J., concurring in part and dissenting in part.

Because the State argued that the jury should convict Trussell on Counts I and II—based on an incident not charged in the information or supported by the evidence—I would reverse those convictions and remand for a new trial.

5

## I. PROCEEDINGS BELOW

Although the underlying facts are ably summarized by the majority opinion, it is necessary—for my analysis—to further elaborate on what transpired at trial. During the State's case-in-chief, Dana Johnson, the clerk of the court for Dixie County, testified that Trussell requested and received access to the courtroom on August 14, 2014, the day before he filed the two "true bills." On cross-examination, defense counsel further explored this incident with Johnson as follows:

> Q. When Mr. Trussell asked you to use this courtroom on August 14th of 2014, where was the conversation you had with him? Where were you guys physically?
> A. I believe he came to my office, the main office in the building here.
> . . . .
> Q. And do you recall Mr. Trussell simply asking you if he could use the courtroom that morning?
> A. Uh-huh. Yes, ma'am.
>
> Q. He didn't actually tell you why, did he?
> A. *No, ma'am.*
>
> Q. You just made an assumption that he was using it for the grand jury, correct?
> A. Because I knew him to be the grand jury foreman of the statutory grand jury for Dixie County.
>
> Q. So based on the fact that he was, you just made an assumption that that was what it was for?
> A. That is correct.
>
> Q. So there was no direct representation to you, was there? You know, I'm the statutory grand jury foreman, I want to use this courtroom this morning?
> A. *No, ma'am.*

(Emphasis added.)

During the State's closing argument, the prosecutor commented on Johnson's testimony as follows:

> One of the things that Terry Trussell did with Dana Johnson, the clerk of the court, was he came in, she knew him to be the foreman of the grand jury, and told her he needed the courtroom to set up for the grand jury that she knew was going to come into session at one o'clock and that she testified that she made arrangements through the county judge's judicial assistant for the courtroom to be available for him to set up for the grand jury.

> So as it pertains to that first element, was he falsely acting as the grand jury foreman to get that room, she knew he was, and as a public officer.

> . . . .

> So as we consider the testimony of Dana Johnson, no question that *Terry Trussell falsely acted as the statutory grand jury foreman, came in, used a session to get the courtroom to institute some legal process against Jeffrey Siegmeister and Mark Rains, which is Counts I and II of the information.*

(Emphasis added.)

After defense counsel reminded the jury that Trussell was not charged with "improperly reserving the room" and that Trussell made no false representations in requesting the courtroom, the prosecutor revisited this issue during rebuttal by stating:

> The courtroom, she [defense counsel] just talked about that, on the morning of October [sic] the 14th was obtained by Terry Trussell. *It was obtained by fraud.*

7

*Total fraud. I need to set up for the grand jury. I don't think that's in dispute in any part.*

*. . . .*

*Reserving this courtroom for the one o'clock meeting to set up was a ruse, it was falsely acting as the foreman of the grand jury and you should find the defendant guilty of Counts I and II because he used a ruse to get the courtroom.* It was not true. It was for the people's common law grand jury who circumvented the rules of this courthouse to get the courtroom.

(Emphasis added.) Defense counsel made a timely objection to this comment asserting that the State was introducing improper character evidence in violation of section 90.404(b), Florida Statutes. The trial court overruled the objection. Trussell was convicted on Counts I and II.

## II. ANALYSIS

On appeal, Trussell argues that the State improperly asked the jury to convict him for his actions on August 14—when Trussell requested the courtroom—even though the information only charged Trussell for his August 15 actions in filing the true bills. *The State concedes that the information did not charge Trussell for requesting the courtroom*, but asserts that because the defense failed to properly object during closing argument, the standard is fundamental error, a standard that the defense has failed to meet.

When a defendant is convicted "on a charge not made in the information or indictment," both his right to be fully informed of the charges against him and his right to due process are denied. *Weatherspoon v. State*, 214 So. 3d 578, 583 (Fla. 2017); *see also Price v. State*, 995 So. 2d 401, 404 (Fla. 2008) ("For an information to sufficiently charge a crime it must follow the statute, clearly charge each of the essential elements, and sufficiently advise the accused of the specific crime with which he is charged."); *Zwick v. State*, 730 So. 2d 759, 760 (Fla. 5th DCA 1999) ("A defendant is entitled to have the charge against him proved substantially as alleged in the indictment or information and [he] cannot be

prosecuted for one offense and convicted and sentenced for another. . . . ").

In *Brown v. State*, 41 So. 3d 259, 261 (Fla. 4th DCA 2010), the information alleged that the defendant committed aggravated child abuse by 1) willful torture, malicious punishment, or unlawful caging; or 2) causing great bodily harm, permanent disability, or disfigurement. At trial, the jury instructions stated that the jury could alternatively convict the defendant for aggravated child abuse by use of a deadly weapon. *Id.* at 262. The prosecutor argued this theory, inviting the jury to convict the defendant based on his use of a bat. *Id.*

In language particularly applicable to this case, the Fourth District recognized that it was "possible . . . that the jury convicted the defendant based upon his use of a deadly weapon, a theory not charged." *Id.* This "possibility" could not be excluded because "the State specifically invited the jury to convict the defendant of aggravated child abuse based upon his use of a deadly weapon . . . ." *Id.* As a result, the Fourth District reversed the defendant's conviction for aggravated child abuse and remanded the case for a new trial. *Id.* at 263; *see also Richards v. State*, 43 Fla. L. Weekly D239, D241 (Fla. 2d DCA Jan. 26, 2018) (reversing a conviction because the defendant was "convicted of a charge that was not made in the information").

Here, Trussell advanced a defense to the charge that he was impersonating a public official when he presented the true bills to the clerk of court. It was not until closing argument that the State argued that Trussell should be convicted for fraudulently requesting the courtroom—conduct that was *not* charged in the information or supported by the evidence. The defense attempted to rebut this improper argument in the defense closing, and when the State persisted in advancing this uncharged and unproven theory, the defense objected, referencing section 90.404(b). This objection was sufficient to preserve Trussell's challenge to the improper argument, and the trial court erred in overruling the objection. Because I cannot exclude the possibility that the jury convicted Trussell based on the uncharged and unproven theory argued by the prosecutor, I would reverse the convictions as to

9

Counts I and II and remand for a new trial. *See Brown* 41 So. 3d at 262.

_____

Arthur J. Morburger, Miami, and Inger M. Garcia, Davie, for Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, for Appellee.